UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| v. ) | Case No. 1:21-cr-130 |
| JACOB BRADLEY DEMARAIS. ) | |

**MOTION FOR COMPASSIONATE RELEASE**

Jacob Bradley Demarais ("Demarais"), by and through the undersigned counsel, respectfully moves for compassionate release consistent with 18 U.S.C. § 3582(c)(1)(A). Demarais has extraordinary and compelling reasons for a sentence reduction; namely, Demarais' stepfather who raised him is ailing, aged and has no other consistent, available caregiver. Demarais also suffers from medical conditions that require specialized care for which Demarais is not receiving, placing Demarais at risk of serious deterioration in health or death.

Demarais is currently scheduled for release from the Bureau of Prisons on February 28, 2028. Given the reason for the instant motion, and the amount of time Demarais has left to serve, Demarais asks the Court to reduce his sentence to time served, but modify his conditions of supervised release to require that he remain on home confinement at

his stepfather's residence until his sentence would have otherwise expired on February 28, 2028. A sentence reduction that allows Demarais to return home to take care of his stepdad, but keeps Demarais on home confinement would be "sufficient, but not greater than necessary," 18 U.S.C. § 3553(a), and otherwise be consistent, on balance, with the remainder of the § 3553 factors. Accordingly, for these and the other reasons below, the Court should grant Demarais compassionate release.

## I.     PROCEDURAL BACKGROUND

Demarais pleaded guilty pursuant to a plea agreement to Count One of an indictment which charged him with distributing visual depictions of a minor engaging in sexually explicit conduct, a violation of 18 U.S.C. § 2252(a)(2) and 2252(b)(1). (ECF No. 39 at 2). The distribution occurred between February 10, 2021, and February 14, 2021. (ECF No. 39 at 2).

While on pretrial release, Demarais completed intensive sex offender treatment. (ECF 51 at Ex. 1). The Court, taking into account all the § 3553 factors, ultimately imposed a sentence of 72 months, and 15 years of supervised release. (ECF No. 68).

## II.   STANDARD OF REVIEW

The First Step Act ("FSA") removed a significant obstacle from judicial review of sentences by permitting courts to consider defendant-filed motions for compassionate release. First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

Under the FSA, this Court has the authority to impose a reduced sentence if extraordinary and compelling reasons exist, the § 3553 factors tilt in favor of a sentence reduction, and public safety would not be jeopardized. *United States v. Sims*, 87 F.4th 917 (8th Cir. 2023). However, a defendant must first present his or her request for compassionate release to the Warden, and then wait 30-days before seeking relief in court. 18 U.S.C. § 3582(c)(1)(A). Additionally, any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

U.S.S.G. § 1B1.13 is the "applicable policy statement" issued by the Sentencing Commission. According to § 1B1.13, as pertinent here:

> (b)   *Extraordinary and Compelling Reasons*. –
> Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

(1) *Medical Circumstances of the Defendant.*

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

…

(3) *Family Circumstances of the Defendant. –*

…

(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "immediate family member" refers to any individual listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

…

(5) *Other Reasons.* – The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

U.S.S.G. § 1B1.13 (2023). Accordingly, this Court has the authority to

consider whether Demarais' need to care for his stepfather, individually

or combined with other factors, constitutes extraordinary and compelling reasons for a sentence reduction.

### III.  ARGUMENT

**(a)  <u>The Court Has Jurisdiction Over Demarais' Motion</u>**

A court may modify a defendant's sentence upon motion of the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. " 18 U.S.C. § 3582(c)(1)(A). Demarais has satisfied the exhaustion requirement by sending a request to his warden, through counsel, and waiting thirty days to file this motion. On November 14, 2023, Demarais, through counsel, submitted a request for compassionate release to the Warden. *See* Exhibit 1. As more than 30 days have passed since that request, Demarais' motion is properly before the Court.

**(b)  <u>The Need To Care For Demarais' Stepfather Is An Extraordinary and Compelling Reason</u>**

Demarais' stepfather, Mark Fairchild, suffers from multiple sclerosis. *See*, Sealed Exhibit 2. Unfortunately, since Demarais' incarceration, Mark's health has continued to deteriorate. *See generally*,

Exhibit 2 (support letters from family). According to Leah Kessler, Mark's daughter, Mark's short term memory loss has become unmanageable the last couple of years once he started living by himself. *Id.* Leah indicates that the situation has become dire because "there have been multiple incidents that are concerning for his safety," and that Mark "has difficulty recognizing when he needs assistance until it is too late." *Id.* For instance, Mark tried to fix his wood stove that heats his home with duct tape, nearly leading to a catastrophic fire. *Id.* On another occasion, Mark had a gas leak in his home that he was unable to appreciate the seriousness of. *Id.* Leah also reports that Mark "has worsening motor control and vision deficits, including balance issues and double vision." *Id.* Leah cannot take care of Mark because she and her husband work and have their own family with two children. *Id.*

Mary Thorson, who lived with Mark from 2017 to 2021, does not believe that Mark should live alone. *See*, Exhibit 2.

> He has cut his finger badly while using a hedge trimmer and required 13 stitches. He has cut his leg using a chainsaw to cut wood. He has fallen several times in the bathroom and hit his head because his balance is bad. He has fallen off a ladder. He had a brick fall on his head while trying to build a lean to for his wood and got a concussion but never went to the hospital to have himself checked out. These are just a few examples of accidents he has had.

*Id.* An example injury to Mark's head has been provided to the Court as Sealed Exhibit 3.

As many of the support letters indicate, Demarais has helped Mark for years and so reassuming this role as caretaker for his step-father would be welcome.

Based on Mark's current and declining health condition, along with the absence of other caretakers, Demarais argues that "extraordinary and compelling" circumstances are present consistent with U.S.S.G. § 1B1.13(b)(3)(C)-(D). Additionally, Demarais contends that Mark's need for a caretaker falls within the "other reasons" category, § 1B1.13(b)(5) because Mark's medical and caretaker situation is "similar in gravity" to the circumstances in § 1B1.13(b)(3)(C)-(D).

Other courts have granted compassionate release so defendants can care for a debilitated parent, whether father, stepfather, or mother. In *United States v. Mendoza*, 2022 U.S. Dist. LEXIS 91239, *7 (N.D. Calif. May 20, 2020), the court held "Mendoza has shown that he is the only available caregiver who can provide the assistance that his father requires." Relatedly, in *United States v. Wright*, 2022 U.S. Dist. LEXIS 40176, *12 (S.D. Calif. Mar. 7, 2022), the court granted compassionate

release when the defendant's stepfather suffered from severe illness and needed a caretaker. Similarly, in *United States v. Dragone*, 2021 U.S. Dist. LEXIS 17980, *4 (D. Conn. Feb. 1, 2021), the court explained, "Considering the poor health of Dragone's stepfather and urgent financial needs of his family, as well as the harsh circumstances of inmates incarcerated during COVID-19," the Court found that " Dragone's circumstances [were] both extraordinary and compelling."

Turning to caring for mothers, in *United States v. Ledezma-Rodriguez*, 472 F. Supp. 3d 498, 507 (S.D. Iowa 2020), the court considered "the need to care for a parent" as "supportive of release" even where the defendant "did not produce enough evidence that he is the only available child who can aid[] his mother"). The court also determined that the defendant had a "manifestly unjust" sentence, which warranted compassionate release. Likewise, in *United States v. Solorio-Quintero*, 2021 U.S. Dist. LEXIS 64321, *2 (E.D. Calif. Apr. 1, 2021), the court granted compassionate release to care for the defendant's 65-year-old mother with medical conditions who was caring for her three minor children. Relatedly, in *United States v. Rojas*, 2021 U.S. Dist. LEXIS 194464, *3-8 (S.D. Calif. Oct. 7, 2021), the defendant

was granted compassionate release because her aging 78-year-old mother was the primary caretaker of Rojas' child when both the defendant's mother and her child had serious medical conditions, which required a great deal of assistance.

Courts have held the same in many other cases. *United States v. Rodriguez*, 2022 U.S. Dist. LEXIS 64567, *4 (D. Conn. Apr. 6, 2022) (considering the defendant's need to help care for his mother as a compelling circumstance); *United States v. Hernandez*, 2020 U.S. Dist. LEXIS 135952, *1-2 (S.D. Fla. Apr. 3, 2020)(granting compassionate release to defendant whose mother required regular medical treatment and who was suffering from cancer, degenerative ocular disease, and mobility problems); *United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019) (compassionate release granted to defendant who was only available caregiver for an ailing, close member of his family: his mother).

Courts have also granted compassionate release to care for extended family members. In *United States v. Reyes*, 2020 U.S. Dist. LEXIS 58894, *7 (N.D. Ill. Apr. 3, 2020), the court granted

compassionate release when the defendant's aunt had stage four cancer and caring for his aunt was difficult for the defendant's family.

Accordingly, on this basis alone, the Court should find that Demarais is eligible for compassionate release.

**(c)** **Demarais' Personal Medical Circumstances Are Extraordinary and Compelling**

Demarais also argues that "extraordinary and compelling reasons" exist for release because he is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1).

Demarais suffers from ulcerative colitis and has chronic knee pain after falling on ice in November 2022. *See*, Sealed Exhibit 1 at p.2. Ulcerative colitis is a serious medical condition that requires specialized care from a gastroenterologist.[1] Appropriate diet is also required.[2]

---

[1]    https://gi.org/topics/ulcerative-colitis/ ("UC is a chronic disease so having a GI doctor with experience in seeing people with UC is best").

[2]    https://www.crohnscolitisfoundation.org/diet-and-nutrition/special-ibd-diets ("the International Organization for the Study of Inflammatory Bowel Diseases (IOIBD) recommends a Mediterranean-style diet").

Ulcerative colitis can lead to toxic megacolon, colon cancer, liver problems, sores in the mouth, and other complications if not treated properly.[3] Additionally, lack of adequate care may result in a proctocolectomy, also known as j-pouch surgery, to store excrement instead of a colostomy bag.[4] A j-pouch is highly susceptible to inflammation and infection, which can lead to pouchitis, an infection that can cause serious complications. *United States v. Reid*, No. 19-20637, 2023 U.S. Dist. LEXIS 133150, at *2 (E.D. Mich. Aug. 1, 2023).

While Demarais' condition has not yet deteriorated to the point where a j-pouch is required, the lack of specialized care or proper diet will eventually require this kind of surgical intervention. But to receive compassionate release, Demarais does not need to wait until his health has deteriorated to the point of surgical intervention. Instead, he need only show that he is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and

---

[3] *Id.*

[4] https://www.crohnscolitisfoundation.org/what-is-ulcerative-colitis/surgery/j-pouch-surgery

without which the defendant is *at risk* of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(emphasis added).

Demarais is not under the care of a gastroenterologist. He is not receiving a Mediterranean style diet.[5] Indeed, a quick examination of the Bureau of Prisons' national menu, shows how incompatible the food it serves is with the Mediterranean style diet Demarais needs for his ulcerative colitis. *See*, Exhibit 4.[6]

The BOP's failure to provide Demarais with specialized care, including an appropriate diet, places Demarais squarely "*at risk* of serious deterioration in health." U.S.S.G. § 1B1.13(b)(1). Indeed, the court in *Reid* found the lack of appropriate care for pouchitis and proper diet as an extraordinary and compelling reason for relief. *Reid*, 2023 U.S. Dist. LEXIS 133150, at *6. Accordingly, extraordinary and compelling reasons exist for release.

---

[5]    https://www.hsph.harvard.edu/nutritionsource/healthy-weight/diet-reviews/mediterranean-diet/ ("The Mediterranean diet is a primarily plant-based eating plan that includes daily intake of whole grains, olive oil, fruits, vegetables, beans and other legumes, nuts, herbs, and spices. Other foods like animal proteins are eaten in smaller quantities, with the preferred animal protein being fish and seafood.")

[6]    Exhibit 4 is a copy of the Bureau of Prisons' national menu for fiscal year 2024.

**(d) The § 3553(a) Factors Support Release**

The § 3553(a) factors, to the extent they apply, weigh in favor of a reduction in sentence.

The nature and circumstances of the offense underlying Demarais's conviction are admittedly serious. But Demarais has never minimized his conduct, and accepted responsibility for his offense.

Likewise, showing his sincere desire to turn his life around and make amends, he participated in intensive sex offender therapy before sentencing which ultimately found, at the conclusion of that therapy, that Demarais was a low-risk to reoffending.

The § 3553(a) factors consider rehabilitation, focusing on the person today rather than the person when the crime was committed. This is because Congress, in drafting § 3553(a), acknowledged that people can and do change. *Pepper v. United States*, 562 U.S. 476 (2011). This is the case with Demarais, who has dedicated himself to change by living with honesty, integrity, and empathy and taking responsibility for his choices and actions.

The need for just punishment can be satisfied by requiring that Demarais serve the balance of his custodial sentence on home

confinement at his step-father's residence. Indeed, Demarais caring for his step-father day in and day out while on home confinement is likely more punishment than being in the Bureau of Prisons considering the emotional and psychological toll caretaking imposes on individuals.[7]

A sexual offense does not automatically bar someone from compassionate release. Numerous courts have recognized that people change:

• *United States v. Sweet*, No. 07-CR-20369, 2021 U.S. Dist. LEXIS 69177 (E.D. Mich. Apr. 9, 2021) (granting compassionate release to defendant convicted of producing and possessing child pornography, including state convictions for murder and rape, finding 64% of sentence served was "sufficient" to comply with § 3553(a)).

• *United States v. Patrick*, No. 3:12-CR-000141, 2022 U.S. Dist. LEXIS 126469 (D. Conn. July 18, 2022) (granting compassionate release to defendant convicted of enticing a minor for sexual activity, after denying his first compassionate release motion, finding 112 months of

---

[7] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2791523/ ("Caregiving has all the features of a chronic stress experience").

180 months served was sufficient to allow him to return home to care for "ailing" family member).

- *United States v. Weikel*, No. 16-CR-20659, 2020 U.S. Dist. LEXIS 212344 (E.D. Mich. Nov. 13, 2020) (granting compassionate release to defendant, after serving half his 8-year sentence for transportation of child pornography and taking photos of himself nude with a child, finding that this period of incarceration has sufficiently deterred future criminal conduct, afforded just punishment, and promoted respect for the law").

- *United States v. Jacques*, No. 16-20759, 2021 U.S. Dist. LEXIS 146709 (E.D. Mich. Aug. 5, 2021) (granting compassionate release to sex offender sentenced to 96 months but who had served only 38 months).

- *United States v. Wheelock*, No. 13-136, 2021 U.S. Dist. LEXIS 99684 (D. Minn. May 26, 2021) (granting compassionate release to sex offender sentenced to 180 months who had only served approximately 84 months).

- *United States v. Miller*, No. 17-cr-404, 2020 U.S. Dist. LEXIS 241244 (N.D. Ill. Dec. 22, 2020) (granting compassionate release to child

pornography offender sentenced to 84 months who had served 42 months).

- *United States v. Magnuson*, No. 15-cr-50095, 2020 U.S. Dist. LEXIS 233817 (D.S.D. Dec. 11, 2020) (granting compassionate release to attempted child sex trafficker sentenced to 72 months who served just 54 months).

## IV. CONCLUSION

For the foregoing reasons and any others that the Court deems appropriate and just, the Court should reduce Demarais' sentence to time served, and modify Demarais' conditions of supervised release to require that he remain on home confinement at his step-father's residence until February 28, 2028, the date Demarais otherwise would have been released from Bureau of Prisons custody.

        Respectfully submitted,

        <u>/s/Brandon Sample</u>
        Brandon Sample
        Brandon Sample PLC
        1701 Pennsylvania Ave. N.W. # 200
        Washington, DC 20006
        Tel: 202-990-2500
        Fax: 202-990-2600
        E-mail: brandon@brandonsample.com