UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
| v.                           ) | Case No. 1:21-cr-130 |
| JACOB BRADLEY DEMARAIS.      ) | |

**SECOND MOTION FOR COMPASSIONATE RELEASE**

Jacob Bradley Demarais ("Demarais"), by and through undersigned counsel, respectfully moves this Court for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).

Since the Court's previous denial of compassionate release, substantial new developments have emerged that warrant granting relief. Specifically, despite assurances previously provided by the Government regarding adequate medical care in the Bureau of Prisons (BOP), Mr. Demarais has not received necessary medical treatment, placing his health at significant ongoing risk. Additionally, the cognitive health and safety of his stepfather, Mark Fairchild—who raised Mr. Demarais as his own child—have markedly deteriorated, intensifying the urgent need for a family caregiver.

Mr. Demarais has also made significant strides toward rehabilitation, completing key therapeutic programs and actively pursued continued self-improvement, demonstrating his readiness for supervised release.

In light of these extraordinary and compelling circumstances, and in consideration of the factors under 18 U.S.C. § 3553(a), Mr. Demarais respectfully requests that this Court grant him compassionate release to time served, followed by a period of home confinement while on supervised release.

## I. BACKGROUND

Demarais is currently serving a 72-month sentence imposed on March 10, 2023, for distribution and possession of materials depicting the sexual exploitation of minors (ECF 79 at pp. 1-2). While confined, critical developments regarding Mr. Demarais' own health and that of his stepfather, Mark Fairchild, have emerged, warranting compassionate release.

Mr. Demarais suffers from ulcerative colitis, a chronic inflammatory bowel disease requiring ongoing specialized care, including regular colonoscopies and consistent medication to manage

flare-ups When Mr. Demarais originally sought compassionate release, the Government represented—and the Court relied upon—assurances that the Bureau of Prisons (BOP) would adequately manage his medical needs, specifically referencing a scheduled colonoscopy and routine follow-up treatment (ECF 79 at pp. 8-9).

However, contrary to these assurances, the BOP has failed to provide critical medical care. In September 2023, an outside gastroenterologist explicitly requested a colonoscopy for Mr. Demarais due to concerns regarding his ulcerative colitis. Despite this clear medical directive, as of February 2025, Mr. Demarais still has not received the colonoscopy or even secured scheduling for it.

Mr. Demarais repeatedly expressed concern about this lack of care and clearly documented that medical providers at multiple institutions recommended a colonoscopy, yet no steps were effectively taken to ensure this critical procedure was provided.

Moreover, BOP medical records demonstrate repeated delays and unfulfilled medical consultations. Even basic follow-up laboratory tests required to manage his chronic condition were frequently delayed or inadequately provided. Such lapses present significant risks to Mr.

Demarais's health and directly contradict the Government's prior representations about adequate care.

Additionally, the health of Mark Fairchild, who raised Mr. Demarais from childhood, has significantly deteriorated. Mr. Fairchild suffers from progressive Multiple Sclerosis, which has resulted in substantial cognitive impairment, short-term memory loss, and inappropriate behavior due to worsening frontal lobe dysfunction *(Letter of Dr. Michael V. Baich, April 8, 2025, p. 1)*. Dr. Baich specifically noted that Mr. Fairchild has become increasingly susceptible to financial exploitation, losing substantial sums to scams, and now urgently requires direct supervision by a trusted family member to avoid institutionalization (Letter of Dr. Baich, April 8, 2025, p. 1).

Since incarceration, Mr. Demarais has also pursued extensive rehabilitative efforts. He successfully completed the Non-Residential Drug Abuse Program (NRDAP) and a course on Traumatic Stress and Resilience. *See*, Exhibit 2. Furthermore, Mr. Demarais has proactively sought enrollment in the Residential Drug Abuse Program (RDAP), demonstrating consistent commitment to his rehabilitation through daily participation in supportive meetings and structured programs.

## II.   STANDARD OF REVIEW

The First Step Act ("FSA") removed a significant obstacle from judicial review of sentences by permitting courts to consider defendant-filed motions for compassionate release. First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

Under the FSA, this Court has the authority to impose a reduced sentence if extraordinary and compelling reasons exist, the § 3553 factors tilt in favor of a sentence reduction, and public safety would not be jeopardized. *United States v. Sims*, 87 F.4th 917 (8th Cir. 2023).

However, a defendant must first present his or her request for compassionate release to the Warden, and then wait 30-days before seeking relief in court. 18 U.S.C. § 3582(c)(1)(A). Additionally, any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

U.S.S.G. § 1B1.13 is the "applicable policy statement" issued by the Sentencing Commission. According to § 1B1.13, as pertinent here:

> (b)   *Extraordinary and Compelling Reasons*. –
> Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

(1)   *Medical Circumstances of the Defendant.*

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

…

(3)   *Family Circumstances of the Defendant. –*

…

(C)   The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D)   The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "immediate family member" refers to any individual listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

…

(5)   *Other Reasons.* – The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

U.S.S.G. § 1B1.13 (2023). Accordingly, this Court has the authority to

consider whether Demarais' need to care for his stepfather, individually

or combined with other factors, constitutes extraordinary and compelling reasons for a sentence reduction.

## III.  ARGUMENT

**(a)  The Court Has Jurisdiction Over Demarais' Motion**

A court may modify a defendant's sentence upon motion of the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. " 18 U.S.C. § 3582(c)(1)(A). Demarais has satisfied the exhaustion requirement by sending a request to his warden, through counsel, and waiting thirty days to file this motion. On November 14, 2023, Demarais, through counsel, submitted a request for compassionate release to the Warden. *See* Exhibit 1. As more than 30 days have passed since that request, Demarais' motion is properly before the Court.

**(b)  The Bureau of Prisons Has Failed to Provide Necessary Specialized Medical Care**

   1. Detailed Medical Background on Ulcerative Colitis

Ulcerative colitis (UC) is a chronic autoimmune condition characterized by persistent inflammation and ulceration of the colon

and rectum. This debilitating disease leads to severe abdominal pain, chronic diarrhea, rectal bleeding, significant weight loss, fatigue, and various nutritional deficiencies. It carries heightened risks for life-threatening complications, including colorectal cancer, toxic megacolon, severe gastrointestinal bleeding, and bowel perforation.

According to widely accepted medical guidelines, such as those published by the American Gastroenterological Association (AGA) and Crohn's & Colitis Foundation, effective long-term management of UC requires regular specialized monitoring, including surveillance colonoscopies every one to two years, even during remission.[1] This regular surveillance is critical for the early detection and prevention of colorectal cancer, a known risk factor significantly heightened by long-standing UC.

Medical consensus holds that any delay or absence of these recommended procedures dramatically escalates the risk of severe

---

[1] https://gastro.org/clinical-guidance/endoscopic-surveillance-and-management-of-colorectal-dysplasia-in-inflammatory-bowel-diseases-ibd/

https://www.crohnscolitisfoundation.org/science-and-professionals/education-resources/colorectal-cancer-risk-ibd

complications, irreversible disease progression, and premature death. Consequently, medical professionals universally recognize routine colonoscopies and consistent specialist oversight as essential, not merely elective or optional, components of appropriate UC treatment.

    2. Medical Recommendations and Necessity of Specialized Care

Jacob Demarais has a well-documented, chronic diagnosis of ulcerative colitis, repeatedly confirmed throughout his incarceration (D.012, D.022–D.023, D.037–D.038, D.136–D.140).[2] Medical records indicate ongoing clinical management with mesalamine (D.012), alongside explicit recommendations for regular colonoscopies to monitor disease progression and potential cancer risks.

Crucially, on September 7, 2023, an outside gastroenterologist explicitly recommended that Mr. Demarais undergo a colonoscopy, noting a prolonged interval since his last procedure and emphasizing significant clinical concerns related to potential precancerous changes and disease progression (D.022–D.023). The specialist's recommendation was unequivocal, requiring prompt scheduling of this

---

[2] Demarais' medical records are BATES stamped in the lower right hand corner of each page and will be filed under seal.

critical procedure to adequately manage Mr. Demarais's condition and mitigate severe health risks associated with unchecked inflammation and potential malignancy.

Despite clear medical documentation and the external gastroenterologist's explicit recommendation, the BOP has repeatedly failed to provide or schedule this necessary specialized care. Records from Terre Haute and Sandstone from late 2024 (D.136–D.140), and most recently at Elkton FCI through early 2025 (D.252–D.254), confirm continuous acknowledgment by BOP medical providers of the necessity of a colonoscopy—yet these acknowledgments resulted in no concrete scheduling or action. Elkton FCI's medical records explicitly note the colonoscopy recommendation as pending yet unscheduled, despite multiple transfers, follow-up requests, and clinical reminders of its urgency (D.252–D.254).

This documented, ongoing delay now spans more than a year from the explicit recommendation, constituting a clear and continuing breach of basic medical care standards and significantly heightening Mr. Demarais's risk for irreversible complications. Such extensive delays in medically essential care directly contradict the assurances previously

provided to this Court by the Government, on which the Court's prior denial of compassionate release substantially relied (ECF 79 at pp. 8–9; ECF 81 at pp. 5–6).

Given this stark and well-documented gap between established medical necessity and the actual provision of care, extraordinary and compelling reasons unquestionably exist under U.S.S.G. § 1B1.13(b)(1)(C). This provision explicitly encompasses circumstances where necessary specialized medical care is not provided, placing the defendant at serious risk of substantial deterioration or death— precisely the situation facing Mr. Demarais.

**(c)     Mark Fairchild's Caregiver Needs Due To Cognitive Decline Constitutes Extraordinary Family Circumstances Under U.S.S.G. § 1B1.13(b)(3)(C)**

1. Medical and Clinical Overview of Multiple Sclerosis

Multiple Sclerosis (MS) is a chronic, progressive autoimmune disease that causes damage to the central nervous system, specifically targeting the protective myelin sheath around nerve fibers. MS manifests through diverse neurological symptoms, which progressively worsen over time. The disease is particularly insidious in its later stages, characterized by progressive cognitive impairment, memory

loss, executive dysfunction, and pronounced difficulty managing daily activities and personal affairs.

Advanced-stage MS commonly produces significant cognitive deficits, often including impaired short-term memory, judgment difficulties, personality changes, and pronounced vulnerabilities to financial exploitation due to diminished executive functioning. Cognitive impairment related to MS is widely recognized by neurologists as one of the most debilitating aspects of the disease, significantly reducing quality of life and independence.

    2.    <u>Mark Fairchild's Cognitive Deterioration Worsens</u>

Mark Fairchild, Mr. Demarais's stepfather and primary parental figure since childhood, suffers from a severe and progressive form of MS. Recent clinical evaluations by his treating physician, Dr. Michael Baich, explicitly document a rapid acceleration of cognitive decline. Dr. Baich notes substantial short-term memory loss, increasingly impaired judgment and decision-making capabilities, and frontal lobe dysfunction resulting in inappropriate behaviors and poor impulse control (Letter of Dr. Michael Baich, April 8, 2025, p. 1).

Most alarmingly, Mr. Fairchild's cognitive deterioration has left him acutely vulnerable to financial scams and exploitation. Dr. Baich specifically highlights that Mr. Fairchild has been victimized multiple times, resulting in substantial monetary losses. This recent history underscores the immediate urgency and necessity for direct, reliable supervision from a trusted caregiver who can assist with daily activities, financial management, and protect him from further harm.

Dr. Baich's evaluation explicitly emphasizes the critical necessity for immediate intervention from a trusted family caregiver to enable Mr. Fairchild to remain safely in his home and community environment. Without such intervention, institutionalization is the inevitable and imminent outcome.

### 3. Urgent Necessity for a Trusted Family Caregiver

U.S.S.G. § 1B1.13(b)(3)(C) explicitly recognizes incapacitation of a family caregiver as extraordinary and compelling circumstances warranting compassionate release. In this context, "incapacitation" includes severe cognitive deterioration, substantial inability to manage basic personal affairs, and pronounced vulnerability to exploitation—precisely the circumstances demonstrated in Mr. Fairchild's case.

The relationship between Mr. Demarais and Mr. Fairchild, explicitly recognized by this Court previously, underscores the appropriateness of compassionate release. Mr. Fairchild raised Mr. Demarais as his own child, and the bond of trust and care between them remains deeply rooted.

Indeed, medical and psychological research consistently demonstrates that individuals with significant cognitive impairment respond best and experience the greatest quality-of-life improvement when cared for by trusted family members, rather than institutional caregivers or strangers. The importance of familiar, trustworthy, and compassionate care in managing the profound effects of advanced MS cannot be overstated.[3]

Given the explicit clinical findings, Dr. Baich's recommendation, and the uniquely trusted familial relationship between Mr. Fairchild and Mr. Demarais, extraordinary and compelling family circumstances

---

[3] *Quality of life in people with cognitive impairment: nursing homes versus home care,* https://www.sciencedirect.com/science/article/pii/S1041610224005465

now unquestionably exist. These circumstances directly satisfy the criteria set forth by U.S.S.G. § 1B1.13(b)(3)(C).

### (d) The § 3553(a) Factors Support Release

**A. Nature and Circumstances of the Offense**

The underlying offense—distribution and possession of child pornography—is undeniably serious and harmful. However, the Court must also consider how much punishment is sufficient but not greater than necessary. Mr. Demarais has already served a significant portion of his 72-month sentence, during which time he has faced considerable hardship due to inadequate medical treatment, significantly exacerbating the punitive aspects of his incarceration.

Furthermore, the structured release proposed does not minimize the seriousness of his offense; rather, it represents a balanced approach recognizing both punishment already endured and his substantial rehabilitative progress.

**B. History and Characteristics of the Defendant**

Title, 18 U.S.C. § 3553(a) directs the Court to consider the defendant's personal history and characteristics. In this case, Mr. Demarais's documented efforts toward meaningful rehabilitation clearly

illustrate his personal commitment to change. He has consistently participated in comprehensive rehabilitative programs designed specifically to address underlying factors associated with criminal behavior, including completing the Non-Residential Drug Abuse Program (NRDAP) and the Traumatic Stress and Resilience Program *See*, Exhibit 2.

Additionally, his proactive efforts to secure placement in the Residential Drug Abuse Program (RDAP)—notably his active, sustained attempts to enroll despite logistical barriers—demonstrate substantial motivation toward self-improvement and personal accountability. These characteristics, extensively documented throughout his incarceration, strongly support compassionate release under appropriate supervision. Additionally, people close to Mr. Demarais also recognize the positive steps he has taken—and continues to take—to better himself.

### C. Adequate Deterrence and Protection of the Public

The purpose of criminal sentencing includes deterrence and public safety. Here, these objectives have been adequately met by the significant prison time already served, coupled with demonstrated rehabilitation and an effective supervised release plan. Empirical

studies and correctional research consistently affirm that intensive rehabilitation programs significantly reduce recidivism risks, especially when combined with structured supervision upon reentry. Mr. Demarais's successful completion of critical rehabilitative programs, combined with his demonstrated ongoing commitment, strongly indicate a low likelihood of recidivism.

Additionally, compassionate release under strict supervision, involving mandatory counseling, consistent oversight by probation officers, and structured home confinement, will ensure continued deterrence and public safety.

**D. Need to Provide Medical Care and Family Support**

Section 3553(a)(2)(D) specifically emphasizes the need for a sentence to "provide the defendant with needed medical care … in the most effective manner." As detailed extensively in prior sections, the Bureau of Prisons has repeatedly failed to provide necessary specialized medical care for Mr. Demarais's chronic ulcerative colitis, directly jeopardizing his health and potentially shortening his lifespan.

Compassionate release, allowing access to timely and appropriate specialized medical care outside of prison, is undeniably the most effective means to address these urgent medical needs.

Additionally, § 3553(a) includes consideration of family support obligations. Here, compassionate release allows Mr. Demarais to provide urgently needed care for Mark Fairchild, whose significant cognitive decline now demands constant supervision by a trusted caregiver. Allowing Mr. Demarais to fulfill this familial caregiving role furthers the statute's intent by addressing both urgent medical and critical family support needs in the most humane and effective manner possible.

### E.  The Goals of Sentencing Have Been Satisfied

Finally, courts must consider whether the sentence imposed adequately reflects the seriousness of the offense and promotes respect for the law. Given that Mr. Demarais has already served nearly two years of imprisonment, the punishment has been substantial. Moreover, the extraordinary hardship resulting from BOP's failure to deliver necessary medical care has significantly increased the severity and

punitive nature of his incarceration beyond what was originally contemplated.

The structured supervised release plan proposed herein does not undermine the original sentencing objectives but rather serves them effectively by ensuring continued accountability and rehabilitation. Compassionate release under structured conditions promotes continued respect for the law by demonstrating a balanced, humane, and just response to extraordinary circumstances.

Considering the totality of the circumstances—including medical urgency, familial caregiving obligations, extensive documented rehabilitation, and comprehensive safeguards ensuring public safety—each statutory factor identified in § 3553(a) strongly supports compassionate release.

## IV.  CONCLUSION

For the foregoing reasons and any others that the Court deems appropriate and just, the Court should reduce Demarais' sentence to time served, and modify Demarais' conditions of supervised release to require that he remain on home confinement at his step-father's

residence until February 28, 2028, the date Demarais otherwise would have been released from Bureau of Prisons custody.

Respectfully submitted,

/s/Brandon Sample
Brandon Sample
Criminal Center LLC
1701 Pennsylvania Ave. N.W. # 200
Washington, DC 20006
Tel: 202-990-2500
Fax: 202-990-2600
E-mail: brandon@criminalcenter.com
