## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

UNITED STATES OF AMERICA,     )

v.                            )          Case No. 1:21-cr-130

JACOB BRADLEY DEMARAIS.        )

### MOTION FOR RRC RECOMMENDATION

Jacob Bradley Demarais ("Demarais"), by and through undersigned counsel, respectfully moves this Court to issue a formal judicial recommendation that he be designated to a Residential Reentry Center ("RRC") at the earliest practicable date prior to his projected release date of February 28, 2027. This recommendation is requested pursuant to 18 U.S.C. § 3624(c), the Second Chance Act of 2007, and the factors set forth in 18 U.S.C. § 3553(a).

Since the Court's most recent denial of compassionate release on September 22, 2025, developments in the record warrant the Court's attention for purposes of this more limited request. Most significantly, the Court's September 2025 order found that Demarais "continues to avoid sex offender treatment while in custody." Doc. No. 89 at ¶7. That finding was made on September 22, 2025—the same period during

which Demarais had in fact been actively participating in sex offender treatment at FCI Elkton for nearly three months.

## I. BACKGROUND

Demarais is currently serving a 72-month sentence imposed on March 10, 2023, for distribution and possession of materials depicting the sexual exploitation of minors. Doc. No. 64. His projected release date is February 28, 2027. He is currently housed at FCI Elkton, Ohio.

This Court has denied two motions for compassionate release—first on April 23, 2024 (Doc. No. 84), and again on September 22, 2025 (Doc. No. 89). This motion does not seek compassionate release. It seeks only a judicial recommendation regarding the duration of RRC placement to which the Bureau of Prisons ("BOP") is authorized to transfer Demarais under 18 U.S.C. § 3624(c).

The BOP has currently designated Demarais for RRC placement beginning June 23, 2026, which would constitute approximately eight months of prerelease community confinement before his February 28, 2027 projected release date. Demarais respectfully requests that this Court recommend an earlier start date—adding approximately two additional months of community transition—and that the BOP be

encouraged to give that recommendation serious weight in its individualized assessment.

While the twelve-month statutory maximum under § 3624(c) is no longer achievable given the passage of time, a ten-month placement is fully within the BOP's authority and reflects the weight of the rehabilitative record now before the Court.

## II. THE COURT'S PRIOR FINDING REGARDING SEX OFFENDER TREATMENT IS CONTRADICTED BY THE RECORD

In denying the first compassionate release motion on April 23, 2024, the Court observed that "the Defendant has not availed himself of sex offender treatment while in custody." Doc. No. 84 at ¶7. At that time—approximately thirteen months into his sentence—that observation was accurate. No sex offender treatment had yet been made available to Demarais, as his records confirm he was at FCI Thomson and FCI Sandstone during that period, neither of which offered the Sex Offender Management Program ("SOMP").

In denying the second compassionate release motion on September 22, 2025, the Court again found that "[t]he Defendant continues to avoid sex offender treatment while in custody." Doc. No. 89 at ¶7. This finding, however, is directly contradicted by official BOP records. BOP

Psychology Services Group Participation records for FCI Elkton confirm that Demarais enrolled in SOMP—specifically the Phase I program—on July 1, 2025, nearly three months before the Court's September 22 order issued.

Over the enrollment period, Demarais attended 27 sessions and accumulated 37 total treatment hours. His documented participation rating across completed sessions was uniformly good. Demarais did not avoid treatment—he actively engaged in it.

Demarais voluntarily withdrew from the program on September 25, 2025—three days after the Court's order, and after the last session noted in the participation record. The withdrawal was not a refusal of treatment. As reflected in BOP records and Demarais's own contemporaneous account, the withdrawal followed a period of treatment overload: Demarais was simultaneously enrolled in RDAP, SOMP Phase I, the National Parenting Program, and the InsideOut Dad Program—a combination that the BOP's own scheduling created by placing multiple time-conflicting programs concurrently. His withdrawal was voluntary and respectful, and his participation throughout the enrollment period had been documented as good.

## III.   DEMARAIS HAS COMPILED AN EXTENSIVE RECORD OF REHABILITATION

Separate from the SOMP issue, Demarais's overall programming record is substantial. Since his designation in June 2023, official BOP records document completion of the following programs and courses:

A. Formal Treatment Programs

Demarais has completed the following major BOP treatment programs: (1) the Non-Residential Drug Abuse Program (NRDAP), completed March 28, 2024, at USP Thomson; (2) the residential portion of the Residential Drug Abuse Treatment Program (RDAP), completed December 8, 2025, at FCI Elkton, as certified by Dr. J. Payne, Chief Psychologist; (3) the Traumatic Stress and Resilience program, completed March 8, 2024, at FCI Thomson; (4) the National Parenting Program, Phase I, completed in the third quarter of 2025; (5) the InsideOut Dad Program (National Fatherhood Initiative), completed in the third quarter of 2025 at FCI Elkton; and (6) the Criminal Thinking program; and (7) the Resolve Workshop.

RDAP completion is specifically recognized by Congress and the BOP as a significant rehabilitative milestone. Under 18 U.S.C. § 3621(e), successful RDAP completion may make a defendant eligible for

early release consideration and signals a meaningful commitment to addressing substance abuse issues that have been linked to criminal conduct. Demarais's completion of both the residential RDAP component and the NRDAP—at different institutions—reflects sustained engagement with treatment across his period of incarceration.

B. Educational and Life Skills Programming

BOP records from the December 10, 2025 case manager memorandum and the January 28, 2026 program review reflect completion of 27 total courses and programs, including Release Preparation, AIDS Awareness, Exercise and Nutrition, Entrepreneurs Toolkit, Mastering Fundamental Math, How the Stock Market Works, Earth's Changing Climate, and multiple arts and language courses. Demarais has held a steady work assignment as an electrician at FCI Elkton since April 2025 and has received satisfactory work performance evaluations.

C. Conduct

Demarais has maintained clear conduct throughout his incarceration, with no disciplinary incident reports in the last six

months reflected in the January 2026 program review. His FSA recidivism risk level is assessed as LOW. The BOP program review further notes he has maintained good rapport with staff and other inmates.

## IV.   DEMARAIS'S MEDICAL NEEDS SUPPORT COMMUNITY PLACEMENT

As this Court is aware from the prior compassionate release litigation, Demarais suffers from chronic ulcerative colitis (UC), a condition requiring ongoing specialized gastroenterological monitoring including periodic surveillance colonoscopies. An outside gastroenterologist recommended a colonoscopy in September 2023.

Despite that recommendation being noted in BOP medical records at multiple institutions—including FCI Terre Haute, FCI Sandstone, and FCI Elkton—and despite Demarais's repeated documented requests, no colonoscopy has been performed as of the filing of this motion.

The failure to provide this procedure does not by itself provide grounds for the relief requested here. However, it is directly relevant to the § 3553(a)(2)(D) factor requiring the Court to consider the need "to provide the defendant with needed educational or vocational training,

medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). Prerelease community confinement would permit Demarais to obtain this long-delayed procedure through a community gastroenterologist and resume proper management of his chronic condition. The BOP's sustained inability to provide this care over a period exceeding two years weighs in favor of earlier transition to community supervision where Demarais can access appropriate medical treatment.

## V.   THE STATUTORY FRAMEWORK SUPPORTS EARLIER AND LONGER RRC PLACEMENT

Under 18 U.S.C. § 3624(c)(1), the BOP " shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." The Second Chance Act increased this maximum from six to twelve months and directed the BOP to make individualized assessments for each inmate. 18 U.S.C. § 3624(c)(6)(A) vis-à-vis 18 U.S.C. § 3621(b) specifies that the BOP shall consider, among other factors, the prisoner's history and characteristics, the nature and

circumstances of the offense, any statement by the sentencing court, and any pertinent policy statement issued by the Sentencing Commission. While the twelve-month window has partially elapsed due to the passage of time since sentencing, the BOP retains full authority under § 3624(c) to designate Demarais to an RRC at any point between now and his release date, and this Court retains authority to recommend a specific placement date.

Courts retain authority to make non-binding judicial recommendations regarding RRC placement. Such recommendations are expressly contemplated by § 3621(b)(4)'s directive that the BOP consider "any statement by the court that imposed the sentence." While the BOP is not bound by a judicial recommendation, it is required to give it individualized consideration. A recommendation from this Court carries significant practical weight.

The factors under § 3553(a) support an earlier RRC start date here. Demarais has served the substantial portion of a significantly below-Guidelines sentence imposed for a serious offense. He has used his period of incarceration to complete RDAP, engage in sex offender treatment, complete over two dozen educational and treatment

programs, and maintained clear conduct. His FSA risk assessment places him at the lowest recidivism risk level.

The BOP's current designation of June 23, 2026—approximately eight months of prerelease confinement—does not fully reflect the weight of Demarais's rehabilitative record or the medical and family circumstances that support an earlier transition. Moving the RRC entry date to approximately April 28, 2026 would yield roughly ten months of community confinement, within the statutory ceiling, and would better serve the reentry objectives Congress designed § 3624(c) to advance.

## VI. CONCLUSION

For the foregoing reasons, Demarais respectfully requests that this Court issue a formal recommendation to the Bureau of Prisons that he be designated to a Residential Reentry Center at the earliest practicable date in advance of his February 28, 2027 projected release date. Demarais further requests that the BOP give that recommendation serious weight in its individualized assessment under 18 U.S.C. § 3624(c).

Respectfully submitted,


<u>/s/Brandon Sample</u>
Brandon Sample
Criminal Center LLC
1701 Pennsylvania Ave. N.W. # 200
Washington, DC 20006
Tel: 202-990-2500
Fax: 202-990-2600
E-mail: brandon@criminalcenter.com